IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS SINTOS, | ) |
|         Plaintiff, | ) Case No. 21 C 5327 |
| v. | ) Judge Sara L. Ellis |
| CITY OF CHICAGO, | ) Mag. Judge Jeffrey T. Gilbert |
|         Defendant. | ) |

## SECOND AMENDED COMPLAINT

Plaintiff, Nicholas Sintos, complains against the Defendant City of Chicago ("the City" or "the City of Chicago") as follows:

### Introduction

1. This complaint arises from the Defendant City of Chicago's violations of the Illinois Human Rights Act ("IHRA") and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 et seq. The City of Chicago refused to hire Plaintiff because of his disability in violation of the IHRA's and the ADA's prohibitions against disability discrimination. 775 ILCS 5/2-102; 42 U.S.C. § 12112. The City also violated the ADA by requiring Plaintiff to undergo a post-offer psychological examination to which it did not subject non-disabled applicants, in violation of the ADA. 42 U.S.C. § 12112(d)(3).

### Parties

2. Plaintiff Nicholas Sintos is an Illinois citizen and a Chicago resident.

3. Defendant City of Chicago is an Illinois municipal corporation.

### Facts

4. In September 2014, Mr. Sintos applied to work as a City of Chicago Firefighter/EMT. He passed the City's written examination and was placed on the eligible

1

list.

5. Mr. Sintos has been diagnosed with major depressive disorder and generalized anxiety disorder, and he also has anxiety and a history of panic attacks. These are determinable mental characteristics within the meaning of the IHRA.

6. Sintos's depression and anxiety are unrelated to his ability to perform the duties of the position of Firefighter/EMT with the City of Chicago Fire Department.

7. Mr. Sintos's depression and anxiety are mental impairments that substantially limit one or more of his major life activities.

8. Despite Mr. Sintos's disabilities, he can perform all of the essential functions of the City of Chicago Firefighter/EMT position.

9. Mr. Sintos has been living with anxiety and depression for at least eight years. He has been actively engaged in treatment for his anxiety and depression for eight years. His treatment includes therapy with a licensed clinical social worker and outpatient appointments with psychiatrists at Rush University Medical Center.

10. Between February and June 2019, and ongoing, the City took adverse action against Mr. Sintos by forcing him to undergo a forensic psychological evaluation that it does not uniformly require of all applicants and by withdrawing his job offer for the position of a City of Chicago Firefighter/EMT.

11. In late summer/early fall of 2018, the City called Mr. Sintos for further processing for the Firefighter/EMT position. In August 2018, he took and passed hair and urine drug screenings.

12. In about October 2018, the City moved Mr. Sintos's application forward again. He submitted a background check questionnaire and was contacted by an investigator

who completed a home visit.

13. In about November or December 2018, the City notified Mr. Sintos that he had been cleared through the background investigation process. The City also notified him of the deadline to submit proof of passage of the Candidate Physical Abilities Test ("CPAT"), which he completed and submitted in March 2019.

14. The City's hiring process for the Firefighter/EMT position does not include a psychological examination. The pre-hire steps are: written examination, drug testing, background check, and passing the CPAT. After clearing each of these steps, the City makes conditional offers of employment.

15. Having completed all required steps, in about November or December 2018, Mr. Sintos received a written conditional offer of employment as a Probationary (Candidate) Firefighter-EMT.

16. The City conditioned its offer of employment upon Mr. Sintos's "successfully completing, to the satisfaction of the Chicago Fire Department, the medical examination which is the next step in the hiring process."

17. In addition, the City's offer letter stated that it "reserves the right" not to offer Mr. Sintos employment even if he did pass the medical examination. The letter states that the offer was conditioned upon "the availability of an open position in a training class at the Chicago Fire Academy."

18. After receiving the City's letter, Mr. Sintos submitted to medical screening, as directed by the Chicago Fire Department. This medical screening examination took place in December 2018 at Concentra.

19. In February 2019, Mr. Sintos was called in to an appointment with Dr.

3

Wong, the head physician in the Medical Division of the Chicago Fire Department, to follow up on some results from the medical screening examination. During this appointment, Dr. Wong told Mr. Sintos that Mr. Sintos needed to see his general practitioner to redo some lab work pertaining to his heart rate and cholesterol. Dr. Wong also gave him a set of documents that he was to bring to his treating psychiatrist at Rush Hospital. The documents included a letter to be completed certifying that Mr. Sintos was fully capable of performing all essential functions of the Firefighter/EMT position. However, without waiting to receive the clearance letter from Mr. Sintos's treating physician, Dr. Wong also directed Mr. Sintos to submit to a forensic psychological examination that is not uniformly required of all applicants and, specifically, to which the City does not subject all entering employees regardless of disability.

20. Several days after his appointment with Dr. Wong in February 2019, Mr. Sintos attended an appointment with his treating psychiatrist, Dr. Vanessa Cutler, who filled out and signed the paperwork that Dr. Wong had given him. This packet included a list of the essential functions of the Firefighter/EMT position with the Chicago Fire Department, with a questionnaire asking the treating physician about Mr. Sintos's fitness to perform those duties. Dr. Cutler reviewed the materials and certified: "Patient has been 100% compliant with care. Based on my interview and assessment today, patient is able to fulfill stated criteria for job and does not present risk of harm to self or others." Thus, Dr. Cutler cleared Mr. Sintos for the Firefighter/EMT position, certifying that his disabilities would not prevent him from performing essential job functions or present any risk of harm.

21. Mr. Sintos also scheduled and underwent the forensic psychological evaluation that Dr. Wong directed him to undergo. This evaluation took place during the

second week of February at Isaac Ray Forensic Group, LLC, at 65 E Wacker Street in Chicago, Illinois. The exam, which lasted about 5 hours, consisted of a 1,500 question test battery, which Mr. Sintos filled out on a scantron prior to having a meeting with a psychologist.

22. During Mr. Sintos's interview with the psychologist, named Dr. Diana Goldstein, she mainly asked questions focusing on his prescribed medication. She also asked Mr. Sintos questions related to his experience of anxiety and depression and made several comments indicating she believed his diagnosis might be incorrect. Mr. Sintos found it surprising that Dr. Goldstein would believe she was in a better position to reach opinions on his mental health diagnoses than the physicians who had treated him for years. In all, the conversation with her lasted around one hour or less.

23. During the psychological evaluation, the psychologist also asked Mr. Sintos several questions about whether he thought he was capable of being a firefighter even with the high occurrence of stress on the job. Mr. Sintos answered that he did believe he was capable of this, and they had a conversation which at the time Mr. Sintos thought was a productive, affirming conversation about how he was well-positioned to be a firefighter because he is actively involved in therapy and treatment, and how therapy and treatment have taught him the skills he needs to cope with high levels of stress.

24. Between February and June 2019, Mr. Sintos called Dr. Wong's office (the Medical Division) every week to make sure that he had received all the paperwork that he had directed him to turn in. Mr. Sintos's calls were rarely answered, so he left many voicemails. In April 2019, four or five months after he received a conditional job offer, Mr. Sintos finally received a call from Dr. Wong's office informing him that they had received

his paperwork but that it had not been reviewed.

25. In March 2019, the City hired a class of Firefighter/EMTs. Although Mr. Sintos had submitted to medical and psychological screening, as directed by the City, and complied with each follow-up directive that Dr. Wong provide him, he was not hired into the March 2019 fire academy class. Instead, the City of Chicago denied Mr. Sintos employment based upon his documented disabilities and despite clearance from his physician.

26. In June 2019, Mr. Sintos finally received a call from Dr. Wong. He told Mr. Sintos that the psychologist from Isaac Ray Forensic Group did not "recommend" him for employment with the Chicago Fire Department. He also told Mr. Sintos something to the effect that he "would not want to put him in a position with a job that causes a lot of stress."

27. At no point during this conversation did Dr. Wong mention that Mr. Sintos's treating psychiatrist, who had been consistently treating him for over a year and a half, had completed and signed a Chicago Fire Department letter clearing Mr. Sintos for duty. Dr. Wong did not state how, if at all, this had factored into his decision to rescind Mr. Sintos's offer of employment.

28. Further, at no point during Mr. Sintos's conversation with Dr. Wong did he identify any medical condition that he claims prevents Mr. Sintos from performing all essential job functions of a City of Chicago Firefighter/EMT with or without accommodation. Nor did he identify any job duties that he claims Mr. Sintos is unable to perform. Dr. Wong's desire not to "put Mr. Sintos in a position with a job that causes a lot of stress" is not a lawful basis to deny Mr. Sintos employment when, according to the physicians who have treated him for years, Mr. Sintos is capable of performing all essential

functions without posing any risk of harm to himself or others.

29. After Mr. Sintos's call with Dr. Wong, he received an email stating that because he did not pass the medical examination, he was being taken off the eligibility list for employment as a Firefighter/EMT. The email did not identify any job duties that Dr. Wong or the City had concluded Plaintiff was unable to perform because of his psychiatric disabilities.

30. In or around 2018, the City, through the actions of Dr. Wong and the Chicago Fire Department Medical Division, instituted an unlawful policy or practice of requiring Firefighter/EMT and Fire Paramedic applicants with a history of psychiatric disabilities to undergo post-offer psychological examinations. The City did not subject non-disabled applicants to post-offer psychological examinations.

31. To arrange for the City to hire Isaac Ray, Dr. Wong spoke to Dr. Goldstein and explained why he wanted to hire Isaac Ray to conduct the examinations, stating, in words or substance: "We are seeing so many people who are unfit," and "I don't feel qualified" to decide the fitness of applicants with a history of psychiatric issues. During the time period that Dr. Goldstein performed the evaluations for the City, Dr. Wong stated to her, in many discussions, that he "d[id] not feel qualified" to make fitness determinations for individuals with a history of psychiatric issues.

32. Before accepting any cases from the Chicago Fire Department, Dr. Goldstein told Dr. Wong that, under the ADA, the City was not permitted to treat applicants with mental health issues differently from other applicants and that requiring only applicants with mental health issues to undergo post-offer psychological examinations was unlawful. She sought assurances that the City would not just send people with a history of psychiatric

issues for examination. She warned Dr. Wong that, if he sent only people with a history of mental health issues for post-offer psychological examinations "he was going to walk himself into a lawsuit" or words to that effect.

33. Although Dr. Goldstein did not receive the requested assurances, she began accepting referrals from the City and examining CFD applicants because, based on her discussions with Dr. Wong, she believed that, if she did not accept the cases, Dr. Wong was just going to reject applicants based on their histories of psychiatric issues.

34. During the period that Dr. Goldstein and Isaac Ray accepted cases from the Chicago Fire Department, she continued warning Dr. Wong that the City's conduct was unlawful, and she insisted on meeting with a lawyer for the City to explain why it could not continue sending only applicants with a history of psychiatric issues for post-offer psychological examinations.

35. A meeting was arranged with Dr. Wong; Edgar Ignacio, the Deputy District Chief over the Chicago Fire Department Medical Division; Elizabeth Crowe, the Coordinator of Human Relations; and an attorney for the City. Dr. Goldstein was adamant that an attorney for the City participate and was assured that an attorney for the City would participate in the meeting. However, on the day of the meeting, the attorney did not show up. Dr. Goldstein was angry that the attorney was absent and explained—again— that the City was violating the law by subjecting only applicants with a history of psychiatric issues to post-offer psychological examinations. She told Dr. Wong and the other attendees that the City's conduct constituted discrimination and stated, "You can't do it." Dr. Wong and the other participants told Dr. Goldstein, "You're right"—but that the City was unwilling to pay to send all Firefighter/EMT and Fire Paramedic applicants for psychological

examinations.

36. When told that the City would not pay to send all applicants for examinations, Dr. Goldstein suggested that the City use a random experiment to evaluate the job relatedness of the psychological examinations for use in screening Firefighter/EMT and Fire Paramedic applicants. Under this approach, the Chicago Fire Department would *randomly* select applicants for post-offer psychological examinations and then follow them for two years to see whether the examinations could reliably predict who would, and would not, do well on the job. Dr. Goldstein told the City that, if the selection of applicants was not random, the evaluation process would have no validity.

37. On information and belief, the City never conducted any experiment, study, or other analysis to determine whether post-offer psychological examinations are job related for either the Firefighter/EMT or Fire Paramedic positions.

38. When it became clear to Dr. Goldstein that the City would not end its unlawful practice of subjecting only applicants with a history of mental health issues for post-offer psychological examinations, she refused to accept additional cases from the Chicago Fire Department.

39. The forensic psychological examinations conducted by Isaac Ray, which constituted the basis for the City's rejection of Mr. Sintos as well as other Firefighter/EMT and Fire Paramedic applicants with psychiatric disabilities, are not designed to identify applicants who are incapable of performing essential job functions. Instead, they are designed to assess whether applicants are a "good fit" for the position. In fact, Dr. Wong sent email to Dr. Goldstein confirming that the City wanted an assessment of whether applicants were a "good fit or not."

40. The Isaac Ray examinations yielded three categories of recommendations: "Acceptable," "Acceptable with Reservations," and "Unacceptable." Isaac Ray did not generate written reports documenting the basis for the "Unacceptable" or "Acceptable with Reservations" ratings for Chicago Fire Department applicants. Instead, Dr. Goldstein conveyed the information orally to Dr. Wong.

41. On information and belief, Dr. Wong refused medical clearance to all applicants found "Unacceptable" after a post-offer psychological examination. He also refused medical clearance to some applicants found "Acceptable with Reservations."

42. When communicating to applicants that they were being denied medical clearance and, therefore, denied hire as a Firefighter/EMT or Fire Paramedic, Dr. Wong did not identify the essential functions of the position the City contended the applicant was unable to perform because of their psychiatric disabilities. Moreover, he did not inform them of their right to seek reasonable accommodation.

43. On information and belief, when communicating to applicants found "Acceptable with Reservations," he did not inform them that they had been found to be "Acceptable with Reservations" or inform them of their right to seek reasonable accommodation.

44. The practices described above constitute an unlawful pattern or practice of disability discrimination by the City against Firefighter/EMT and Fire Paramedic applicants.

45. As a result of the actions described above, including the City's pattern or practice of discrimination against individuals with psychiatric disabilities, Mr. Sintos has been denied a desirable position with the City of Chicago as a Firefighter/EMT and has

been forced to undergo a medical examination to which non-disabled applicants were not subjected. He has lost substantial wages and benefits and has sustained other economic and non-economic damages including for emotional harm and suffering.

46. Mr. Sintos's treating psychiatrist, who had been treating Mr. Sintos for over a year and a half, and who was supervised by psychiatrists who have been overseeing his treatment for eight years, and who is therefore the most informed physician to reach an opinion as to whether his conditions impact his ability to perform all essential job functions as a Chicago Fire Department Firefighter/EMT, cleared Mr. Sintos for employment without reservation in the paperwork that he turned over to the Medical Division. The City of Chicago took adverse action against Mr. Sintos despite the opinion of his treating psychiatrist, and instead based its decision on the evaluation of a psychologist who met with Mr. Sintos for approximately one hour, on one occasion, based upon the administration of 1,500 question non-medical test battery of unknown origin and questionable validity. Mr. Sintos is not aware of any study conducted by the City of Chicago that demonstrates the validity of that psychological test for use in hiring Chicago Fire Department Firefighter/EMTs.

## Legal Standards

47. Section 2-102 of the IHRA provides, in pertinent part:

> It is a civil rights violation . . . [f]or any employer . . . to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination.

775 ILCS 5/2-102(A). The IHRA defines unlawful discrimination to include discrimination based on disability. 775 ILCS 5/1-103(Q).

48. 42 U.S.C. § 12112(a) of the ADA prohibits disability discrimination against

11

otherwise qualified applicants with disabilities, including the use of classifications that adversely impact applicants' job opportunities because of their disabilities and the use of screening or employment criteria that discriminate against individuals with disabilities, unless they are proven to be job related and consistent with business necessity. 42 U.S.C. §12112 (b)(1), (b)(6).

49. 42 U.S.C. § 12112(d) of the ADA prohibits employers from conditioning an offer of employment on the results of a medical examination unless specific conditions are met, including that all entering employees are subjected to such an examination regardless of disability and the results of such examination are used only in accordance with the ADA.

## Exhaustion of Administrative Remedies

50. The IHRA also contains the following provisions:

> If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director[,] and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

775 ILCS 5/7A-102(D)(3).

51. On October 31, 2019, Mr. Sintos filed a charge of discrimination with the Illinois Department of Human Rights alleging that the City of Chicago discriminated against him because of his disability. On October 28, 2020, the Illinois Department of Human Rights dismissed the charge of discrimination for lack of substantial evidence. On November 18, 2020, Mr. Sintos received notice of his right to commence a civil action in circuit court and has filed this complaint within 90 days after his receipt of notice.

52. The ADA requires an individual to receive a Notice of Right to Sue from the Equal Employment Opportunity Commission prior to filing suit in court under the ADA,

12

consistent with procedures in Title VII of the Civil Rights Act 42 U.S.C. §12117; see 42 U.S.C. § 2000e-5. After receipt of the Notice of Right to Sue, an individual has 90 days to commence a civil action. 42 U.S.C. 2000e-5(f)(1).

53. Plaintiff received the EEOC's Notice of Right to Sue on his ADA claims on September 10, 2021 and has filed this First Amended Complaint, adding claims under the ADA, within 90 days of receipt of that Notice.

## COUNT ONE
## Illinois Human Rights Act – Disability Discrimination

54. Plaintiff realleges paragraphs 1-46 as if fully set forth herein.

55. The City of Chicago refused to hire Mr. Sintos because of his mental health disability.

56. The City's illegal conduct caused Mr. Sintos to suffer lost wages and benefits of employment as well as emotional distress and lost career opportunities.

57. Mr. Sintos asks the Court to enjoin the City's illegal conduct because, in the absence of an injunction, the City's illegal conduct is likely to recur, and Mr. Sintos will again suffer irreparable injury. Additionally, he has no adequate remedy at law; and he has a substantial likelihood of success on the merits.

## COUNT TWO
## Americans With Disabilities Act– Disability Discrimination
## (42 U.S.C. §12112)

58. Plaintiff realleges paragraphs 1-46 as if fully set forth herein.

59. The City's actions, as described in paragraphs 1-37, more specifically for refusing to hire him on the basis of his mental health disability, violate the Americans with Disabilities Act's prohibition on disability discrimination in employment. 42 U.S.C. §12112.

60. The City's unlawful conduct has caused Plaintiff to suffer loss of wages and employment benefits, lost career opportunities, and emotional distress.

61. Mr. Sintos asks the Court to enjoin the City's illegal conduct, because in the absence of an injunction, the City's illegal conduct is likely to recur, and Mr. Sintos will again suffer irreparable injury. Additionally, he has no adequate remedy at law; and he has a substantial likelihood of success on the merits.

## COUNT THREE
### Americans With Disabilities Act – Unlawful Medical Examination
### (42 U.S.C. §12112)

62. Plaintiff realleges paragraphs 1-46 as if fully set forth herein.

63. The City's actions, as described in paragraphs 1-46, more specifically for subjecting him to an unlawful psychological examination because of his psychiatric disabilities, violated the Americans with Disabilities Act's requirement that all entering employees are subjected to such examination regardless of disability. 42 U.S.C. §12112(d).

64. The City's unlawful conduct has caused Plaintiff to suffer loss of wages and employment benefits, lost career opportunities, and emotional distress.

65. Mr. Sintos asks the Court to enjoin the City's illegal conduct, because in the absence of an injunction, the City's illegal conduct is likely to recur, and Mr. Sintos will again suffer irreparable injury. Additionally, he has no adequate remedy at law; and he has a substantial likelihood of success on the merits.

## PRAYER FOR RELIEF

Mr. Sintos prays that this Court grant him the following relief:

A. An injunction requiring the City to hire Mr. Santos as a firefighter/EMT, or in the alternative an award of front pay;

B. An injunction prohibiting the City from discriminating against Firefighter/EMT candidates with mental health disabilities;

C. An injunction prohibiting the City from violating § 12112(d) of the ADA by subjecting only entering employees psychiatric disabilities to post-offer psychological examinations for positions as Firefighter/EMTs or Fire Paramedics;

D. An award of back pay;

E. An award of damages compensating him for his lost benefits of employment;

F. An award of damages compensating him for his emotional distress, humiliation, and lost career opportunities;

G. Attorneys' fees, costs, and expenses including expert costs; and

H. Other relief as is just and proper.

## JURY DEMAND

Mr. Sintos demands trial by jury on all jury issues.

Dated: March 8, 2022                By: /s Marni Willenson
                                    One of the Attorneys for Plaintiff

Marni Willenson
marni@willensonlaw.com
Willenson Law, LLC
3420 W. Armitage Ave., Suite 200
Chicago, IL 60618
(312) 508-5380