**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS SINTOS, | ) | |
| | ) | Case No. 21 C 5327 |
| Plaintiff, | ) | |
| v. | ) | Judge Sara L. Ellis |
| | ) | |
| CITY OF CHICAGO, | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SINTOS'S REPLY IN SUPPORT OF**
**HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Marni Willenson
Willenson Law, LLC
3420 W. Armitage Ave., Suite 200
Chicago, Illinois 60647
(312) 546-4910
marni@willensonlaw.com

Charles D. Wysong
Hughes Socol Piers
Resnick & Dym, Ltd.
70 W. Madison St., Suite 4000
Chicago, Illinois 60602
(312) 580-0100
cwysong@hsplegal.com

*Counsel for Plaintiff Sintos*

Plaintiff Nicholas Sintos replies to the Defendant City of Chicago's Response to Plaintiff's Partial Motion for Summary Judgment, ECF No. 157 ("Resp.") and in support of his Motion for Partial Summary Judgment, ECF No. 150, as follows:

The City brief is non-responsive to the actual motion for partial summary judgment. The City writes at length about the medical clearance process in general, which Sintos does not challenge. *E.g.* Resp. at 1-6; Memorandum in Support of Partial Summary Judgment, ECF No. 151 ("Mem.") at 18. The City relies repeatedly on Dr. Wong's subjective fear of Sintos and claimed erroneous *belief* that Dr. Goldstein's suitability screening assessed the ability to do job functions. *E.g.* Resp. at 17. Neither point is a defense to any issue in the motion. Causation, direct threat, business necessity, and lawful screening are all objective inquiries. *See, e.g., Branham v. Snow*, 392 F.3d 896, 906 (7th Cir. 2004) (on threat, even a good faith belief by a physician is no defense if it is not objectively correct).

More to the point, the City admits that factually Dr. Wong was wrong on both counts. *E.g.* SOF ¶ 30 (undisputed that "Dr. Goldstein's psychological suitability screening does not, and did not in Sintos's case, and cannot be used to evaluate whether a person can complete any job function of a CFD firefighter/EMT"); SOF ¶ 61 (undisputed that "Sintos would not have been a significant threat to the safety" and had the same "risk of becoming suddenly incapacitated … as other men his age").

The City relies exclusively on the testimony and beliefs of Dr. Wong, yet he cannot provide any opinion testimony at trial. SOF ¶ 8. Indeed, the three medical experts in this case all support Sintos. This includes Dr. Czernacki, the former CFD medical director, who offers *unrebutted* opinions despite the City's repeated effort to discredit him as a "paid doctor." Resp.

at 3, 4, 11, 12. The City does not even engage with or attempt to distinguish *any* of the case law cited by Sintos, on any of the five issues. The motion should be granted in full.

**A. Causation: The City Does Not Actually Dispute that Dr. Wong Denied Sintos Medical Clearance on the Basis of His Disability.**

Even if the Court credits the City's extensive recitation of the medical clearance process, and the sincerity of Dr. Wong's purported subjective fears, none of the arguments dispute causation. Dr. Wong denied Sintos medical clearance "on the basis of," because of, his disability as defined under the ADA (actual, record of, or regarded as). Mem. at 6-9. Dr. Wong sought mental health records, referred Sintos for further evaluation of his mental health, and documented mental health as the reason in his contemporaneous notes explaining the denial on his 4:00pm call with Dr. Goldstein on February 13, 2019. *Id.*; SOF ¶¶ 38-45.

Indeed, the City's Response admits that it disqualified Sintos "on the basis of" his mental health disability. Resp. at 7 ("Dr. Wong disqualified Plaintiff . . . due to Plaintiff's present condition of major depressive disorder . . . "); *Id.* at 12 (arguing that Sintos was a threat only because "<u>his mental [health] condition</u> could make him incapacitated"). *See also* SOF ¶ 52 and SOF Ex. 34 (Dr. Wong signed form that Sintos was not hired due to alleged "severity of medical condition; not recommended for hire by psychologist").

Grasping at straws, the City searches in vain for some *other* reason Dr. Wong denied Sintos medical clearance. The City fails. Dr. Wong did not disqualify Sintos because of the 2014 suicide attempt, Resp. at 11; when he learned of it, he sent Sintos for further evaluation. SOF ¶¶ 18-23. Regardless, the suicide attempt is part and parcel of his mental health history, his "disability" and history of disability under the ADA by another name.

Dr. Wong did not disqualify Sintos for "symptoms" observed at a January 25, 2019 evaluation. Resp. at 11. He sought Dr. Goldstein's opinion. SOF ¶¶ 18-23. And those "symptoms" were "minimal depression symptoms." SOF, Ex. 13, Wong Dep. at 128:16-20.

Dr. Wong did not deny medical clearance for "medication usage." Resp. at 11. When Dr. Wong learned of the medication, he sent Sintos for further evaluation. SOF ¶¶ 18-23. Regardless, the medication was an "antidepressant" for his disability. SOF, Ex. 13, Wong Dep. at 129:11-130:3. These are not "factors that lie separate and apart" from his disability. Resp. at 11. The City just points to Sintos's disability again and again.

Nor can the City re-write the undisputed facts to now claim that Sintos was denied for some independent "concerns" of Dr. Wong. Resp. at 11. Dr. Wong denied medical clearance "because of" feedback from Dr. Goldstein about his mental health. SOF ¶ 38; Mem. at 6-8.

No reasonable jury could conclude that Dr. Wong actually denied Sintos medical clearance for some reason *unrelated* to his mental health disability. *Bostock v. Clayton Cnty., Georgia,* 590 U.S. 644, 656 (2020) ("So long as the plaintiff's [disability] was one but-for cause of that decision, that is enough to trigger the law.").

**B. Affirmative Defense 4: Dr. Wong's Subjective Fear Does Not Create a Fact Issue on Direct Threat, Especially When The City Admits Sintos Was Not a Threat.**

The only alleged threat that the City identifies is the theory that Sintos's "mental condition could make him incapacitated during an emergency response." Resp. at 12. Dr. Wong's subjective belief that the risk associated with Sintos was "severe" does not create a dispute of fact to preclude summary judgment. Mem. at 12 (citing SOF ¶ 57). The assessment of risk must be objectively correct. An employer's "belief that a significant risk existed, even if maintained in good faith, would not relieve him from liability," even when the person with the belief is a physician. *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998).

The City has no objective evidence that Sintos presented "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). The City has identified no evidence to dispute the fact that "Sintos would not have been a significant threat to the safety" if he worked for CFD. SOF ¶ 61. The unrebutted *facts* include that "Sintos's risk of becoming suddenly incapacitated was the same as other men of his age, and the risk was not increased by his mental health diagnoses or history." SOF ¶ 61. At the time of evaluation, no one disputes that Sintos's symptoms were mild or minimal and not causing impairment, SOF ¶¶ 15, 39, or that Dr. Wong concluded that Sintos had "minimal depression" and "low anxiety," *Id.* ¶ 20 Even Dr. Wong testified that his fears otherwise were "speculation of course." SOF ¶ 54.

Further, the City did not remotely comply with the legal requirements to use the "best available objective evidence" to reject Sintos. 29 C.F.R. § 1630.2(r)*; Bragdon*, 524 U.S. at 649. Dr. Wong did not consider information from Sintos's treating mental health professionals, SOF ¶¶ 22, 48, did not know what a "direct threat" assessment was, SOF ¶ 53, or consider scheduling, mental health screening, or other accommodations, SOF ¶ 60.

The City's cases do not suggest otherwise. *See Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 671 (7th Cir. 2000) (upholding the termination of doctor who "was under the influence of alcohol while seeing patients" because any employee could be terminated for that conduct); *Emerson v. N. States Power Co.*, 256 F.3d 506, 514 (7th Cir. 2001) (explaining the difference between qualification and direct threat in case where the court could not even tell which framework the plaintiff alleged, "because [employer] meets its burden under either framework" where safety incidents had already occurred for a current employee).

Indeed, the City's remarkable position that "accommodations **could not be made** for this position" of firefighter, Resp. at 13 (emphasis added), confesses a blatant violation of the ADA. Employers must engage in the interactive process and must make reasonable accommodations for all positions. 42 U.S.C. § 12112(b)(5).

The City cannot present this defense to the jury when it admits that Sintos was not a threat and the City did not meet the legal standard. *See also* Mem. at 9-12.

### C. Count III: The City Cannot Use General Medical Screening to Justify the Selective Use of a Psychological Suitability Assessment that is Not Job Related.

The City argues that a medical examination may include follow-up evaluations, when justified. Resp. at 6. Sintos does not disagree with the general point and does not dispute that Dr. Wong could seek information about Sintos's mental health. Mem. at 13-17.

The City agrees that "additional follow up must assess whether the applicant's medical conditional will impair their ability to perform the essential functions of the job of pose a direct threat." Resp. at 17; 42 U.S.C. § 12112(b)(6) and (d)(3); *Wright v. Ill. Dep't of Child. & Family Servs.,* 798 F.3d 513, 522-23 (7th Cir. 2015); Mem. at 14-17. The Parties agree on the law. And the Parties agree that judgment on Count III turns on this "dispute." Resp. at 17.

But there is no genuine dispute of fact. The City cannot prove that Dr. Goldstein's suitability screening assessed the ability of the applicant to do the job. 42 U.S.C. § 12112(b)(6); 29 C.F.R. § 1630.10. The suitability screening is a biographical questionnaire, part of a personality test, and an interview, which is solely a "risk assessment" of the likelihood of a poor occupational outcome in a firefighter or paramedic, comparing survey results to the results of "a pool of public safety individuals." SOF ¶¶ 25, 31. It is undisputed that the "psychological suitability screening does not, and did not in Sintos's case, and cannot be used to evaluate whether a person can complete any job function of a CFD firefighter/EMT." SOF

¶ 30; *id.* ¶ 29 ("it would be a misuse to use those tests for a fitness-for-duty exam"). This is Dr. Goldstein's screening, and she has undisputed testimony to this point unequivocally and in detail. *See* SOF ¶¶ 29 – 35.

The City has no response. Dr. Wong cannot offer any contrary opinion at trial. SOF ¶ 8 (he "will not offer opinion testimony"). Further, the City's claim that "Dr. Wong concluded that the screening was job-related and consistent with business necessity" is false and not supported by any evidence. Resp. at 18. He concluded no such thing. The actual testimony is: "Q: Did you think it was comparable to a fitness-for-duty exam that you were sending members to undertake? … A: Is it equivalent to a fitness review? No it is not." SOF Ex. 13, Wong Dep. at 43:19-44:1 "Q: Does it determine a person's fitness at the time – point in time of the evaluation? … A: It might be." *Id.* at 44:12-16. "Q: Was unacceptable a fitness determination? … A: Is it a fitness determination? That is a good question. I guess it is in a way." *Id.* at 104:11-16. Even the testimony the City cites at page 181—at best—discusses Dr. Wong's investigation of business necessity, not any conclusion. *Id.* at 181:15-22.

Regardless, it would be no defense if Dr. Wong subjectively and erroneously thought "that the screening was job-related" Resp. at 18; *See Wright v. Ill. Dep't of Child. & Family Servs.*, 798 F.3d 513, 522-23 (7th Cir. 2015); Mem. at 16-18. The City's only authority holds that an applicant *selection* for further evaluation was lawful, not anything about the legitimacy of the follow up evaluation. *See Sumler v. Univ. of Colorado Hosp. Auth.*, 16-CV-02557-RM-KLM, 2018 WL 5043907 (D. Colo. Oct. 17, 2018).

The Court should enter judgment for Sintos on liability on Count III entirely. Mem. at 18 (explaining Count III does not turn on whether Sintos was qualified).

**D. Affirmative Defense 9: The Suitability Assessment is Not Job Related.**

The sole evidence the City cites is Dr. Wong's belief. Resp. at 17. Thus, for the same reasons, the City has no evidence, and no expert opinion that the suitability screening was job-related and consistent with business necessity. Mem. at 17-18.

**E. Affirmative Defense 2: The City Has No Evidence to Prove Failure to Mitigate.**

The City ignores both the binding authority that governs its burden on the failure to mitigate affirmative defense and the argument in Sintos's memorandum. Mem. at 19-20. The City tries to argue that Sintos should have looked harder for other work (even though he did look and was always employed full time). Resp. at 18; SOF ¶¶ 69, 72.

Even if true, Sintos is still entitled to summary judgment. The City ignores that it must *also* prove "there was a reasonable likelihood that the plaintiff might have found comparable work." *Hutchinson v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994) ("comparable" work must have the same pay and opportunities as the position lost). The City has no evidence of any comparable job. SOF ¶ 70. The sole bit of evidence the City cites is Sintos's statement that he saw a job posting. Resp. at 19. That is not enough. It does not prove that any such job was actually available to Sintos or even what it paid. SOF ¶ 70 (undisputed that the record contains no evidence of any job available or what it paid). The City's two cases are irrelevant on this point: *Jankowski v. Dean Foods Co.*, 378 F. Supp. 3d 697, 713 (N.D. Ill. 2019), says nothing about alternative positions, and the plaintiff there did not even "seek employment for nearly a year" after getting fired, while Sintos was employed. SOF ¶ 72. *Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1175 (7th Cir. 1998), simply upholds a jury verdict that a plaintiff mitigated. The City cannot prove Sintos failed to mitigate.

/

/

**Conclusion**

For the reasons stated herein, and in the original Memorandum, the Court should grant in full Sintos's motion for partial summary judgment on all five issues.

Dated: March 14, 2025

Respectfully submitted,

By: /s/ Charles D. Wysong
One of the Counsel for Plaintiff Sintos

Marni Willenson
Willenson Law, LLC
3420 W. Armitage Ave., Suite 200
Chicago, Illinois 60647
(312) 546-4910
marni@willensonlaw.com

Charles D. Wysong
Hughes Socol Piers
Resnick & Dym, Ltd.
70 W. Madison St., Suite 4000
Chicago, Illinois 60602
(312) 580-0100
cwysong@hsplegal.com