UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS SINTOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 5327 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

In August 2014, Plaintiff Nicholas Sintos, who has depression and anxiety, applied to work as a firefighter/EMT with the City of Chicago Fire Department ("CFD"). In fall 2018, the City offered Sintos employment conditioned on medical clearance. CFD's medical director required Sintos to undergo a psychological suitability screening, which the City does not uniformly require all applicants to complete. In February 2019, CFD's medical director rejected Sintos for medical clearance, causing the City to withdraw Sintos' job offer and take him off the eligible candidate list. Sintos brought this lawsuit against the City, alleging that the City discriminated against him based on his disability, in violation of the Illinois Human Rights Act (the "IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.*, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*; and that the psychological suitability screening constituted an unlawful medical examination under the ADA. Sintos has moved for partial summary judgment in an attempt to narrow the issues for trial. Because no reasonable juror could find for the City on the limited issues raised by Sintos in his motion, the Court grants Sintos' motion for partial summary judgment.

# BACKGROUND[1]

Since 2010, Sintos has worked full-time as a medical coder, with no gaps in employment. Sintos applied to work as a firefighter/EMT for CFD on August 14, 2014. After Sintos passed the written examination, the City placed him on the firefighter/EMT eligibility list. In the fall of 2018, he received an invitation to process and successfully completed the initial processing, which included passing drug screenings, a background investigation, and a pre-hire physical test. The City then made Sintos an offer of employment, conditioned on medical clearance.

Dr. William Wong, the CFD medical director, made medical clearance decisions for firefighter/EMT candidates like Sintos. Dr. Wong graduated from Wright State University's medical school in 1996. He completed a three-year residency in internal medicine in 1999 and a two-year fellowship in 2001. He also received a master's in public health from the University of Illinois at Chicago and served as an academic intelligence service officer for the Center for Disease Control and Prevention. He had a one-month rotation in occupational medicine during his residency. He took continuing medical education courses through the American College of Occupational and Environmental Medicine and Central States Occupational and Environment Medicine Association, as well as training courses with the U.S. military. Dr. Wong began making medical clearance decisions for CFD in 2014.

Medical professionals have diagnosed Sintos with major depressive disorder and anxiety disorders. In 2014, Sintos attempted suicide by medication while admitted to a partial hospitalization program, which led to his hospitalization for several days. For twenty-four months thereafter, Sintos qualified for a suicidal behavior disorder diagnosis. But he has had no suicidal ideations, suicide attempts, or psychiatric hospitalizations since 2014. At the time of the

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts and the exhibits attached thereto. The Court takes all facts in the light most favorable to the City, the non-movant.

medical clearance process in late 2018 and early 2019, Sintos had a diagnosis of "moderate episode of recurrent" major depressive disorder, for which he took nortriptyline. Doc. 152 ¶ 14. His mental health symptoms "were mild or minimal, well managed, and not causing occupational or social impairment." *Id.* ¶ 15.

On December 21, 2018, Sintos underwent a medical examination at Concentra Urgent Care as part of the medical clearance process. He completed a medical history form, in which he disclosed treatment for depression and anxiety and information about his treating psychiatrist, Dr. Vanessa Cutler, and his primary care physician. He also disclosed his 2014 suicide attempt, attributing it to a negative reaction to fluoxetine, and he indicated that he had had no thoughts of suicide since that time. Sintos also noted that he had regularly seen a therapist for the previous five years. The Concentra examiner recommended "consider[ing] psychiatric clearance for history of depression, anxiety, previous suicide attempt, currently on SSRI and prn benzodiazepine." Doc. 152-15 at 2.

After receiving the Concentra file on January 19, 2019, Dr. Wong requested that: (1) Sintos follow up with his primary care physician for abnormal blood laboratory tests and obesity; (2) he complete a three-minute step test for cardiovascular fitness; (3) Sintos' physician complete a questionnaire and provide copies of clinical progress notes related to his depression and anxiety; (4) he undergo a psychological evaluation; and (5) he report to the CFD medical division for an examination. On January 25, 2019, Sintos reported to Dr. Wong for the requested examination. Dr. Wong noted that Sintos had elevated cholesterol and liver function tests, was obese, and had a history of depression and anxiety. Dr. Wong performed three screening tests for mental health conditions: (1) the Alcohol Use Disorders Identification Test, on which Sintos scored a three, which indicated low risk; (2) the Beck Anxiety Inventory, on which Sintos scored

3

a one, the minimal level of anxiety; and (3) the Patient Health Questionnaire, on which Sintos scored a three, indicating minimal depression. Dr. Wong only administered these tests to candidates with a mental health history. Based on the test results, Dr. Wong concluded that Sintos suffered from minimal depression and low anxiety.

Dr. Wong also referred Sintos for a psychological suitability screening administered by Dr. Diana Goldstein of the Isaac Ray Forensic Group. The screening consisted of a twenty-three-page biographical questionnaire, two psychometric exams (the Minnesota Multiphasic Personality Inventory, revised ("MMPI-2"): Public Safety Module, and the Personality Assessment Inventory: Law Enforcement, Corrections and Public Safety Selection Report ("PAI")), and an interview. The City did not subject all aspiring firefighter/EMTs to Dr. Goldstein's psychological suitability screening, only those with psychiatric or substance abuse histories as selected by Dr. Wong. Dr. Wong began sending applicants with a history of mental health conditions to Dr. Goldstein for pre-hire psychological suitability screening in 2018. Dr. Wong told Dr. Goldstein that he referred candidates to her because "he did not feel qualified to determine whether the psychiatric histories of certain of the candidates were sufficiently problematic to reject them." Doc. 152 ¶ 27.

The suitability screening and resulting recommendation did not serve as a fitness-for-duty determination because the screening did not evaluate whether a person could complete the job functions of a CFD firefighter/EMT. Dr. Goldstein did not receive, review, or consider any candidate's medical records in connection with the screening, and her screening could not be used to diagnose individuals with a medical or mental health condition. Instead, the screening served as a "risk assessment" of the occupational outcome of a candidate in a firefighter or paramedic position. *Id.* ¶ 31. The MMPI-2 and PAI compared a candidate's characteristics to

4

those of a pool of public safety individuals who had successfully completed their probationary period. Dr. Goldstein rated individuals as acceptable, acceptable with reservations, or unacceptable. An unacceptable finding on the screening meant that the candidate's results did not look like those of a sample group of individuals who completed the probationary period. Dr. Goldstein did not produce a written report with respect to the suitability screenings she conducted and instead provided Dr. Wong with verbal feedback and a one-page letter that recorded her rating of the candidate. Dr. Goldstein told Dr. Wong that the suitability screening should not be used as a basis for hiring decisions when only used for a selected group of individuals with mental health conditions.[2] Nonetheless, Dr. Wong believed that an unacceptable recommendation from Dr. Goldstein reflected her conclusion that a candidate did not have the present ability to safely perform the essential job functions of a firefighter/EMT. As such, Dr. Wong rejected all applicants who received an unacceptable recommendation from Dr. Goldstein.

On February 13, 2019, Sintos underwent the psychological suitability screening. That same day, at 4 p.m., Dr. Wong spoke with Dr. Goldstein, who reported that Sintos fell into the unacceptable category. Dr. Wong took notes on the phone call, determining that Sintos was "not recommended for hire." *Id.* ¶ 37. Dr. Wong's notes from the call reflect that Sintos had at some unspecified time stopped taking a medication "cold turkey," but Dr. Wong did not know when this occurred. *Id.* ¶ 44. He also noted a 2015 bankruptcy that Sintos had filed, considering it a "stressor" and "part of [Sintos'] history that would potentially contribute to his mental health." *Id.* ¶ 46. Dr. Wong noted the reasons for disqualification as "severe anxiety, panic attack,"

---

[2] Dr. Wong did not know of any other jurisdictions that used the suitability screening for only a select portion of applicants and had initially discussed using the suitability screening for all CFD applicants. CFD did not adopt his recommendation of universal screening, however. Dr. Goldstein and Isaac Ray Forensic Group conducted their last suitability screening for CFD before 2020. CFD stopped using the suitability screenings after that time.

"recent SI [suicidal ideation]," "poor judgment," "still affected by body dysmorphia," and "symptoms of depression," which Dr. Wong concluded did "not bode well for good performance." *Id.* ¶ 37.

At the time Dr. Wong made his decision to deny medical clearance, he did not have any treatment notes or records from Dr. Cutler. The following day, on February 14, 2019, Dr. Cutler provided a completed questionnaire to Dr. Wong. The questionnaire asked Dr. Cutler to provide information regarding Sintos' mental health in light of nine firefighter/EMT job functions and the City's comprehensive list of sixty firefighter/EMT knowledge, skills, abilities, and other characteristics. Dr. Cutler indicated that Sintos previously had a diagnosis of panic attacks and/or panic disorder but that it was "[w]ell treated currently." *Id.* ¶ 40. Dr. Cutler also reported that Sintos had no suicidal ideation over the past two years. Dr. Cutler opined that Sintos was "capable of safe and effective job performance as a Firefighter/EMT" and that his "medical conditions and medications do not interfere with his ability to work as a Firefighter/EMT based on [her] interview and assessment today, 2/14/19." *Id.* ¶ 22. She further noted that Sintos had "been 100% compliant with care" and was "able to fulfill stated criteria for [the] job and [did] not present risk of harm to self or to others." *Id.* ¶ 22.

Based on Dr. Wong's denial of medical clearance, the City withdrew Sintos' job offer and removed him from the eligibility list. Consequently, the City did not hire him into the March 2019 firefighter/EMT class. In a June 7, 2019 memorandum to CFD's human resources commissioner, Dr. Wong indicated that he had determined that Sintos could not perform the essential functions of the firefighter/EMT position and did not meet the National Fire Protection Association ("NFPA") criteria due to the severity of his mental condition and that he was not

6

recommended for hire by the psychologist. Dr. Wong did not identify the essential job functions Sintos could not perform or which of Sintos' mental health conditions met the NFPA criteria.

Despite Dr. Wong's denial of medical clearance, "[i]n February 2019, Sintos would not have been a significant threat to the safety of others if he worked as a CFD firefighter/EMT." Doc. 152 ¶ 61. And his "risk of becoming suddenly incapacitated was the same as other men of his age, and the risk was not increased by his mental health diagnoses or history." Doc. 152 ¶ 61. CFD and Dr. Wong did not make any findings about the specific risk or probability of harm Sintos would create if hired as a firefighter/EMT. Nonetheless, Dr. Wong testified that he considered the risk severe enough to warrant Sintos' disqualification, with the risk being harm to himself, other public safety officials, and to the public. Dr. Wong did not consider whether the risk would dissipate over time or whether CFD could reduce or limit the risk with reasonable accommodations. Dr. Wong acknowledged that his concerns about Sintos' ability to safely and effectively perform the essential functions of a firefighter/EMT were speculative.

Since the City withdrew the firefighter/EMT conditional job offer, Sintos has continued to work as a medical coder. No evidence exists in the record of specific firefighter jobs available for Sintos to apply to since February 2019, or of hiring requirements, the pay, or benefits for any other job that he could have applied to since February 2019. Sintos has not had the opportunity to apply to CFD again since February 2019. While Sintos saw job postings at other fire departments, he did not apply for any of the positions. He testified that certain of these positions required certifications that he did not have. He also testified that he limited his search to Illinois but did not keep records of his search.

7

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

I.  **ADA/IHRA Causation**

The ADA prohibits an employer from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a disability discrimination claim, Sintos must show: (1) he was disabled within the meaning of the ADA; (2) he was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) his disability caused the adverse action. *Schoper v. Bd. of Trs.*, 119 F.4th 527, 534 (7th Cir. 2024). Claims under the IHRA rely on the same analysis as those under the ADA, so the Court evaluates Sintos' ADA and IHRA claims together. *See Nutall v. Rsrv. Marine Terminals*, No. 1:14 CV 4738, 2015 WL 9304350, at *8 (N.D. Ill. Dec. 22, 2015) ("The Illinois Supreme Court instructs that in evaluating claims of discrimination brought under the IHRA, courts should apply the same test employed by federal courts in evaluating causes of action brought pursuant to . . . the ADA.").

The parties have stipulated that Sintos meets the first element based on his "mental health conditions, and separately because the City regarded him as a person with a disability, and separately because he had a history of disability." Doc. 152 ¶ 12. The parties agree that the second element, whether Sintos was qualified to perform the essential functions of a firefighter/EMT with or without a reasonable accommodation, remains a question for the jury. Sintos argues, however, that no genuine dispute exists on the third element, that his disability caused the withdrawal of his job offer and removal from the eligibility list.

9

Causation under the ADA requires Sintos to show that the City would not have taken the adverse action but for his disability. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017).[3] For Sintos to obtain summary judgment, he must show that no dispute of fact exists that, when considering the evidence as a whole, his disability caused the adverse actions. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). In other words, the Court considers whether a reasonable juror could only conclude that Sintos "would not have suffered the same adverse employment action if he were not disabled and everything else had remained the same." *Kurtzhals*, 969 F.3d at 729.

Sintos argues that the undisputed evidence demonstrates that Dr. Wong would not have denied him medical clearance but for his psychological disability. Specifically, Sintos points out that Dr. Wong sent him for the suitability screening because of his psychiatric history and then denied him medical clearance based on Dr. Goldstein's rating of him as unacceptable, which hinged on Sintos' psychiatric history. Sintos also focuses on Dr. Wong's notes from his conversation with Dr. Goldstein, in which Dr. Wong listed concerns with Sintos' mental health as the reason for disqualifying Sintos.

The City responds that the Court should deny summary judgment on the causation element because a reasonable juror could conclude that Dr. Wong would have made the same decision to deny Sintos medical clearance if he were not disabled. The City highlights that Dr. Wong testified that his biggest concern involved Sintos' suicidal ideation and recent suicide attempt, which he claimed could be disqualifying on its own in the public safety context. The

---

[3] Although the ADA Amendments Act of 2008 changed the causation language to prohibit discrimination "on the basis of" instead of "because of" a disability, the Seventh Circuit has not yet resolved whether this change in language alters the causation standard. *See Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) ("[I]t remains an open question in this circuit whether that change affects the 'but for' causation standard we apply in these cases."). The Court similarly need not do so given that Sintos argues that he can establish but-for causation. *See* Doc. 151 at 12 n.3.

City also notes that Wong observed other issues during Sintos' evaluation in January 2019 and had concerns about Sintos' medication usage, including the potential side effects of the medication. Finally, the City contends that Dr. Wong did not blindly rely on Dr. Goldstein's input when making his medical clearance decision, using that input instead as confirmation and validation of his own concerns about Sintos' ability to perform the firefighter/EMT job.

None of the City's arguments, however, change the fact that a reasonable jury could only find that, had all other factors remained the same and Sintos not been disabled, Dr. Wong would not have denied him medical clearance. The City admits that Dr. Wong denied Sintos medical clearance because of his "major depressive disorder linked to [his] suicidal attempt, ideations, prior panic attacks, and social anxiety." Doc. 157 at 10. To the extent the City attempts to argue that Dr. Wong's concerns about Sintos' suicidal ideation can be separated from Sintos' disability, that argument falls flat given that his suicidal ideations were a manifestation of his mental health issues. *See Corbier v. Watson*, No. 16-CV-257, 2018 WL 4815391, at *5 (S.D. Ill. Oct. 4, 2018) ("Jurcich's alleged mental illness is the disability, and his suicidality was a manifestation of that disability."). Similarly, Dr. Wong's concerns about medication usage are tied to Sintos' mental health issues and disability. Finally, although Dr. Wong observed certain physical conditions that Sintos suffered during his January evaluation of him, he made no mention of these physical conditions in describing the reasons for denying medical clearance to Sintos, instead focusing on his depression and other mental health issues. The undisputed evidence demonstrates that but for Sintos' disability (whether actual, perceived, or a history of a disability), Dr. Wong would not have denied Sintos medical clearance and the City would not have withdrawn Sintos' job offer.

11

Therefore, the Court finds it appropriate to treat the first and third elements of Sintos' ADA and IHRA claims established. The only remaining question for the jury will be the second element: whether Sintos was qualified to perform the essential functions of the firefighter/EMT position.

## II. Direct Threat Defense

Next, Sintos asks the Court to enter summary judgment for him on the City's direct threat defense. The ADA "provides a defense if the employee's disability poses 'a direct threat to the health or safety of other individuals in the workplace.'" *Stragapede v. City of Evanston*, 865 F.3d 861, 866 (7th Cir. 2017) (quoting 42 U.S.C. § 12113(b)). The ADA defines a "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). In determining whether a risk is significant, the Court considers "(1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that potential harm will occur; and (4) the imminence of potential harm." *Stragapede*, 865 F.3d at 866 (quoting *Emerson v. N. States Power Co.*, 256 F.3d 506, 514 (7th Cir. 2001).

An employer must base a direct threat defense on "medical or other objective evidence," and the "belief that a significant risk existed, even if maintained in good faith, would not relieve [the employer] from liability." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). EEOC interpretive guidance provides:

> The assessment that there exists a high probability of substantial harm to the individual, like the assessment that there exists a high probability of substantial harm to others, must be strictly based on valid medical analyses and/or on other objective evidence. This determination must be based on individualized factual data, using the factors discussed above, rather than on stereotypic or patronizing assumptions and must consider potential reasonable accommodations. Generalized fears about risks from the

> employment environment, such as exacerbation of the disability caused by stress, cannot be used by an employer to disqualify an individual with a disability. For example, a law firm could not reject an applicant with a history of disabling mental illness based on a generalized fear that the stress of trying to make partner might trigger a relapse of the individual's mental illness. Nor can generalized fears about risks to individuals with disabilities in the event of an evacuation or other emergency be used by an employer to disqualify an individual with a disability.

29 C.F.R. Pt. 1630, App. § 1630.2(r).

The City identifies no evidence that creates a genuine dispute of fact as to the applicability of the direct threat defense. The City admits that Sintos would not have posed a significant threat to the safety of others if he worked as a firefighter/EMT, and that Sintos faced the same risk of becoming suddenly incapacitated as other men of his age, with that risk not increased by his mental health diagnoses or history. Further, as Sintos points out, Dr. Wong admitted that his concerns about Sintos' ability to safely perform the functions of the job were speculative, and his speculative belief does not suffice. *See Bragdon*, 524 U.S. at 649 (employer's "belief that a significant risk existed, even if maintained in good faith, would not relieve him from liability"). And to the extent that Dr. Wong based his belief on objective evidence, he did not do so based on an individualized assessment of Sintos as required, with the City instead admitting that no one made any findings about the specific risk of harm Sintos posed. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (direct threat defense requires "an expressly individualized assessment of the individual's present ability to safely perform the essential functions of the job" (quoting 29 C.F.R. § 1630.2(r))). Rather, Dr. Wong improperly based his risk assessment on a generalized assumption that depression and suicidal ideation present a risk to public safety work. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(r) ("Generalized fears about risks from the employment environment, such as exacerbation of the disability caused by stress, cannot be used by an employer to disqualify an individual with a

13

disability."). And finally, although the City contends that CFD did not have a light duty category of work for firefighter/EMT candidates, the City admits that Dr. Wong did not consider whether CFD could reduce any risk of harm through reasonable accommodations, which further undermines the City's direct threat defense.

Therefore, because no reasonable juror could find for the City on the reasonable threat defense, the Court grants summary judgment for Sintos on this affirmative defense.

### III.     42 U.S.C. § 12112(d)

Section 12112(d)(3) allows employers to make job offers conditional on the results of post-offer medical examinations if (A) "all entering employees are subjected to such an examination regardless of disability;" (B) the information obtained is treated as confidential, with specific exceptions; and (C) the examination results are used consistent with the ADA. 42 U.S.C. § 12112(d)(3). Sintos argues that no genuine issue of material fact exists as to the City's violation of this subsection because CFD did not administer the psychological suitability screening to all entering employees, in violation of § 12112(d)(3)(A), and it discriminated against Sintos when it used the results of that screening to withdraw Sintos' job offer, in violation of § 12112(d)(3)(C).

The parties agree that medical examinations can include follow-up evaluations when justified and that Dr. Wong could seek information about Sintos' mental health. The parties also agree that "additional follow up must assess whether the applicant's medical condition will impair their ability to perform the essential functions of the job or pose a direct threat." Doc. 157 at 20; Doc. 158 at 6; *see* 42 U.S.C. §§ 12112(b)(6), (d)(3)(C); 29 C.F.R. § 1630.14(b)(3); 29 C.F.R. § 1630.15(b). But the parties disagree as to whether Dr. Goldstein's suitability screening meets this standard. Dr. Wong testified that he understood Dr. Goldstein to perform "forensic

14

evaluations using her knowledge, training, and experience in evaluating public safety personnel." Doc. 152-13 at 181:20–22. He further understood that her conclusion reflected "an assessment of the person's fitness or performance of safety duties." Doc. 152-13 at 104:21–22; *see also id.* at 45:11–12 ("They were assessments of a person's psychological status."). Dr. Goldstein, on the other hand, testified that the suitability screening was not a fitness-for-duty determination and should not be used to predict how well someone could safely and effectively perform a job. She instead described the suitability screenings of having the purpose of "assessing risk of a poor outcome in firefighting/paramedicine careers." Doc. 152-30 ¶ 14.

Although Dr. Wong's and Dr. Goldstein's testimony appears to create a factual dispute on this issue, no reasonable juror could find for the City on the question of whether the suitability screening amounted to a permissible follow-up examination. The City agreed that the suitability screening "does not, and did not in Sintos's case, and cannot be used to evaluate whether a person can complete any job function of a CFD firefighter/EMT." Doc. 152 ¶ 30. Nor did the suitability screening address whether an individual posed a direct threat, instead merely comparing whether the individual would have a poor career outcome, such as termination, poor performance evaluations, absenteeism, discipline, complaints, or disability claims. Doc. 152-30 ¶ 14. Dr. Wong's personal understanding to the contrary does not matter, particularly given that the City did not disclose Dr. Wong as an expert witness and has indicated that he will not present any opinion testimony at trial. *See Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 523 (7th Cir. 2015) (whether examination is job-related or consistent with business necessity is an objective inquiry). Given Dr. Goldstein's unequivocal testimony on the matter, and the City's acknowledgment that the suitability screening did not amount to a fitness-for-duty examination, no reasonable juror could find that the City did not violate § 12112(d)(3) by requiring certain

individuals to undergo Dr. Goldstein's suitability screening. Therefore, the Court enters judgment for Sintos as to liability on his § 12112(d)(3) claim.

## IV. Job-Related and Business Necessity Defense

Relatedly, Sintos contends that the City cannot prevail on its affirmative defense that the City's medical examination of firefighter/EMT applicants is job-related and consistent with business necessity. As alluded to above, the ADA prohibits the use of "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

The analysis of this affirmative defense largely tracks that for Sintos' § 12112(d) claim, as the parties themselves acknowledge. An "examination is job-related and consistent with business necessity when an employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Kurtzhals*, 969 F.3d at 730 (quoting *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009)). As discussed above, no reasonable juror could find that the suitability screening was job-related given Dr. Goldstein's testimony that the suitability screening did not assess whether an individual could perform the essential functions of the position in question. Without any evidence to contradict this, the City cannot prevail on its affirmative defense.

## V. Failure to Mitigate Defense

Finally, Sintos argues that the City cannot prevail on its failure to mitigate affirmative defense. "Although the duty to mitigate falls on the plaintiff, it is the defendant's burden to

16

establish that the plaintiff failed to mitigate his damages." *Stragapede v. City of Evanston*, 125 F. Supp. 3d 818, 824 (N.D. Ill. 2015), *aff'd*, 865 F.3d 861. To establish this affirmative defense, the City must demonstrate that "(1) the plaintiff failed to exercise reasonable diligence to mitigate her damages, and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence." *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994); *see also Stragapede*, 865 F.3d at 868 (reaffirming use of two-part framework in ADA case).

Here, Sintos contends that the City has produced no evidence of available comparable work and so it cannot meet its burden to show failure to mitigate. The City's response mainly focuses on whether Sintos exercised reasonable diligence in seeking another firefighter position. But even assuming that a question of fact exists as to whether Sintos exercised reasonable diligence, this does not suffice to allow the failure to mitigate defense to go to the jury. *See Stragapede*, 865 F.3d at 868–69 ("An employee can mitigate his damages only if it is within his power to reduce the harm he suffered. The plaintiff's backpay award should not be reduced based on failure to mitigate if reasonably diligent effort would not have been likely to produce comparable employment."). The only argument that the City makes as to comparable work is to note that Sintos acknowledged seeing job openings at other fire departments. But the City also admits that no evidence exists in the record "of any specific job available for Sintos to apply to since February 2019" or "of the requirements to get hired or the pay or benefits for any other job that may have been available for Sintos to apply to since February 2019." Doc. 152 ¶ 70. Against these admissions, no reasonable juror could conclude from Sintos' general testimony that he saw other job postings for firefighters that such jobs amounted to "comparable work" to the CFD firefighter/EMT position. *See Hutchison*, 42 F.3d at 1044 ("comparable employment"

involves a position with "virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status"); *cf. Meyer v. United Air Lines, Inc.*, 950 F. Supp. 874, 877–78 (N.D. Ill. 1997) (employer carried burden to show existence of comparable employment by presenting a survey of available job postings over a three-year period that aligned with the plaintiff's prior work and drew on her past years of experience). Because the City has effectively conceded that it cannot meet its burden on the second element of its failure to mitigate defense, the Court grants Sintos summary judgment on this defense. *See Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1257 (N.D. Ill. 2015) (failure to mitigate defense failed where employer did "not make even a perfunctory effort to meet the second element of its affirmative defense: namely, that there was a reasonable chance there was comparable work to be found").

## CONCLUSION

For the foregoing reasons, the Court grants Sintos' motion for partial summary judgment [150]. The Court finds the issue of causation with respect to Sintos' ADA and IHRA claims established. The Court enters summary judgment for Sintos as to liability on his § 12112(d) claim (Count III) and on the City's direct threat, business necessity, and failure to mitigate affirmative defenses (affirmative defenses 2, 4, and 9).

Dated: July 1, 2025

_____
SARA L. ELLIS
United States District Judge